**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 15-1524

JOSÉ E. VALDEZ, MARÍA A. VALDEZ,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia Carreño-Coll, U.S. Magistrate Judge]

Before

Howard, Chief Judge, and
Torruella and Lipez, Circuit Judges.

Benjamín Morales del Valle, with whom Morales-Morales Law Offices was on brief, for appellants.
John S. Koppel, Attorney, Appellate Staff, Civil Division, U.S. Department of Justice, with whom Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mark B. Stern, Attorney, Appellate Staff, Civil Division, were on brief, for appellee.

August 16, 2016

**LIPEZ**, **Circuit Judge**.    This case requires a straightforward application of the discretionary function exception to the Federal Tort Claims Act (FTCA).  Plaintiffs sued the United States for negligence after a slip-and-fall in a national forest, claiming that the FTCA waives sovereign immunity for their suit.  They concede that the relevant government conduct was discretionary, but attempt to avoid the discretionary function exception on the ground that the conduct was not an exercise of policy judgment.  Because their argument is foreclosed by the precedents of this court, we affirm.

## I.

The relevant facts are undisputed.  On September 29, 2012, plaintiffs Maria and Jose Valdez visited El Yunque National Forest, a tropical rain forest in Puerto Rico administered by the United States Forest Service.  They walked on one of the park's trails on their way to La Coca Falls.  Roughly a mile into their walk, Maria slipped and fell, injuring her right hand and wrist. Plaintiffs claim that the fall -- and, hence, Maria's resulting injuries, her subsequent surgery, and the couple's emotional distress -- were caused by the slippery trail conditions and the lack of handrails and posted warnings on the trail.  After their administrative complaint to the Forest Service went unanswered, plaintiffs brought this action against the United States pursuant to Puerto Rico's general negligence statute, i.e., Article 1802 of

the Civil Code, see P.R. Laws Ann. tit. 31, § 5141, and the FTCA, see 28 U.S.C. §§ 1346(b), 2671-80.  The parties consented to proceed before a magistrate judge.  See 28 U.S.C. § 636(c).  The government then moved to dismiss, claiming that the discretionary function exception applied, and therefore sovereign immunity prevented the district court from hearing plaintiffs' suit.  The district court agreed and dismissed the case.  Plaintiffs appeal, and we review the judgment de novo.  See Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

## II.

The FTCA waives the government's sovereign immunity for certain tort claims, but the statute contains exceptions.  See, e.g., Mahon v. United States, 742 F.3d 11, 12 (1st Cir. 2014). One exception applies where a claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency."  Id. (quoting 28 U.S.C. § 2680(a)).  A "well-established framework" governs the application of the discretionary function exception.  Carroll v. United States, 661 F.3d 87, 99 (1st Cir. 2011).  To determine whether the exception applies, we first identify the government conduct that allegedly harmed the plaintiffs.  Mahon, 742 F.3d at 14.

We then ask two questions: first, whether that conduct is discretionary, meaning that it "involve[s] choice," id., and is

not dictated by a "statute, regulation, or policy," id. (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)).  Second, if it is discretionary, we then "must ask 'whether the exercise or non-exercise of the granted discretion is actually or potentially' affected by policy-related judgments."  Id. (quoting Fothergill v. United States, 566 F.3d 248, 252 (1st Cir. 2009)).  We presume that the answer to the second question is "yes," though that presumption may be rebutted.  See id. ("[T]he law presumes that discretionary acts involve policy judgments."); see also United States v. Gaubert, 499 U.S. 315, 324 (1991) ("[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations."). "'[Y]es' answers to both questions mean the discretionary-function exception holds sway and sovereign immunity blocks the litigation. But a 'no' answer to either question means the exception does not apply and the suit may continue."  Mahon, 742 F.3d at 14.

The magistrate judge described the relevant conduct as follows.  "The conduct of which Plaintiffs complain is the United States Forest Service's decisions (1) not to warn of slippery rock on the La Coca trail, (2) not to eliminate the cause of that slipperiness, and/or (3) not install handrails on the trail." Valdez v. United States, No. 3:13-cv-01606-SCC, slip op. at 3-4

- 4 -

(D.P.R. Mar. 12, 2015). The parties find no fault with this characterization.

As to the first question, the magistrate judge noted that the manuals and policies governing the maintenance of trails in national forests "suggest that the Forest Service had no specific mandate regarding the posting of signs, maintenance of trails, or installation of safety devices," id. at 4 n.3, and "conclude[d] that the Forest Service's conduct was discretionary in all relevant respects," id. at 5. On appeal, plaintiffs waive any contention that the Forest Service's actions were not discretionary, stating that the district court "correctly established that . . . the United States Forest Service didn't have a prescribed course of action for the employee to follow in terms of maintenance, notice and/or lack of security equipment."

Moving to the second step of the analysis, the question is whether plaintiffs have rebutted the presumption that the government's exercise of discretion was "policy-driven -- that is, . . . fueled by 'variables about which reasonable persons can differ.'" Mahon, 742 F.3d at 16 (quoting Fothergill, 566 F.3d at 253). Unfortunately for plaintiffs, they labor under the misapprehension that it is an open question who should bear the burden of showing that the government's discretionary conduct is policy-driven. Proceeding on this erroneous understanding, they do not attempt to rebut the presumption that the government's

conduct was grounded in policy, and instead ask us to hold that "the burden of establishing the regulatory policy should rest on the government," and that "the government has failed to articulate how" the Forest Service's conduct "involved a judgment grounded in regulatory policy."* But, as noted above, this argument runs contrary to established precedent. See, e.g., Bolduc v. United States, 402 F.3d 50, 62 (1st Cir. 2005) ("[T]he government benefits from the presumption that a supervisor's discretionary acts are grounded in policy. It is the plaintiff's burden to rebut this presumption and demonstrate that particular discretionary conduct is not susceptible to policy-related judgments." (citations omitted)).

Even if plaintiffs had properly recognized that it was their burden to show that the Forest Service's discretionary decisions were not grounded in policy, it is unlikely that they could have done so. Our opinions in Mahon and Shansky v. United States, 164 F.3d 688 (1st Cir. 1999), leave little doubt that such decisions involve policy tradeoffs. In Mahon, we considered the National Park Service's choice of whether to raise the height of the railings on the second-story portico of a 19th-century mansion

---

* The government contends that plaintiffs may not make this argument because they failed to raise it below. See Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 391 (1st Cir. 2014). We need not address this contention because the argument fails in any event.

preserved as a national historic site, and held that the balance of "'efficiency, safety, aesthetics, and cost'" inherent in that choice was "the stuff of policy analysis."  742 F.3d at 16 (quoting Fothergill, 566 F.3d at 253).  In Shansky, we considered the lack of handrails and warning signs at a historic building and held that "the government's ultimate policy justification is that forgoing handrails and warning signs at the Northern Exit was the product of a broader judgment call that favored aesthetics over safety.  Aesthetic considerations, including decisions to preserve the historical accuracy of national landmarks, constitute legitimate policy concerns."  164 F.3d at 693.

Cases from our sister circuits reinforce our conclusion that the tradeoffs between safety and aesthetics involved in placing guardrails or signs in scenic wilderness areas are matters of policy.  See Zumwalt v. United States, 928 F.2d 951, 955 (10th Cir. 1991) ("[T]he absence of warning signs was part of the overall policy decision to maintain the [Balconies Cave] Trail in its wilderness state."); Bowman v. United States, 820 F.2d 1393, 1393, 1395 (4th Cir. 1987) (holding that the decision not to install a guardrail on the Blue Ridge Parkway, a highway "intended" for "driving and sight-seeing" on the way to "scenic recreational and wilderness areas," was "the result of a policy judgment").

**Affirmed.**